**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KIMBERLY MATTAIR,

        Plaintiff,

vs.                                           Case No. 3:17-cv-211-J-32PDB

PILGRIM'S PRIDE CORPORATION,

        Defendant.

## ORDER

Plaintiff Kimberly Mattair started working for defendant Pilgrim's Pride Corporation in its chicken processing plant in Live Oak, Florida, in 1998, right after she graduated from high school. By 2007, she had worked her way up to being a Lead in the giblet area. In 2016, Pilgrim's Pride began enforcing a policy that required all employees working on the production floor to wear certain protective gear, including a "bump cap."[1] Mattair, whose job as a Lead in the giblet area required her to be on the production floor, could not wear a bump cap because it gave her migraine headaches so she went on (mostly unpaid) leave in June of 2016. Thereafter, she worked in a few temporary positions with Pilgrim's Pride, applied for a couple positions but did not receive offers, and her husband (who also works at Pilgrim's Pride) declined Pilgrim's Pride's suggestions that she apply for a few other

---

[1] A bump cap is a thin plastic hat, made of lighter material than a hard hat, and is commonly required for workers on the production floor of poultry plants. Moseley Depo. (Doc. 34, Ex. F) at Tr. 16-17, 30; Riley Depo. (Doc. 34, Ex. C) at Tr. 10-11.

openings because they were incompatible with Mattair's church and night school schedule. In September 2017, Mattair accepted a job as a Trainer in Pilgrim's Pride's human resources department, a position that pays a higher salary than Mattair made in her prior position as a Lead in the giblet area. As of the date of the parties' filings, Mattair was still employed in that position at Pilgrim's Pride.

This lawsuit is about three things: whether Pilgrim's Pride violated Mattair's rights under the Americans with Disability Act (ADA) when it enforced its bump cap policy; whether Pilgrim's Pride interfered with Mattair's rights under the Family and Medical Leave Act (FMLA) or retaliated against her for exercising those rights; and whether Pilgrim's Pride retaliated against Mattair for filing an EEOC charge and giving a deposition in another employee's suit against Pilgrim's Pride. As Pilgrim's Pride has demonstrated through its summary judgment papers, the answer to each of these questions is no.[2]

**I.    Discussion**

Under the well-established summary judgment standard, the Court views all evidence and draws all reasonable inferences in the light most favorable to plaintiff, but must grant judgment in defendant's favor if the evidence reveals no genuine dispute as to any material fact and if defendant proves it is entitled to the entry of

---

[2]The Court's review of the file included plaintiff's amended complaint (Doc. 2), defendant's motion for summary judgment (Doc. 34) and attachments thereto, plaintiff's response (Doc. 40) and exhibits (Doc. 39), and defendant's reply (Doc. 44).

judgment as a matter of law. Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1303-04 (11th Cir. 2016) (citations omitted). Unless otherwise noted, the facts recited herein are undisputed.

### A. Count One (ADA and FCRA)[3]

The ADA provides that a covered employer shall not "discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under the ADA, Mattair must show she "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability."[4] Greenberg, 498 F.3d at 1263 (quotation and citation

---

[3]Count One of Mattair's amended complaint is brought under the ADA and under the Florida Civil Rights Act. Disability discrimination claims under the FCRA are analyzed using the same framework as ADA claims; both claims may therefore be considered together. Greenberg v. Bellsouth Telecomms., Inc., 498 F.3d 1258, 1263-64 (11th Cir. 2007).

[4]Title VII's employment discrimination burden-shifting framework applies to disability discrimination claims under the ADA. See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). The Eleventh Circuit, sitting en banc, recently clarified that a Title VII plaintiff relying on circumstantial evidence to meet a prima facie case under McDonnell Douglas' burden-shifting framework must show discrimination by demonstrating that the plaintiff "was treated differently from other individuals with whom she was similarly situated in all material respects." Lewis v. City of Union City, ___ F.3d ___, 2019 WL 1285058, at *12 (Mar. 21, 2019). Although the parties here discuss comparators, the Court's decision relies on other grounds so there has been no need for them to supplement their briefs to account for Lewis.

Mattair cites Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) in her paragraph about the standard of review (see Doc. 40 at 7), but nowhere does she argue that a "convincing mosaic of circumstantial evidence" would allow a

3

omitted).

Among its other arguments, Pilgrim's Pride contends that Mattair cannot establish a prima facie case because she cannot demonstrate she is a "qualified individual" within the meaning of the ADA. "A 'qualified individual' is a person who, with or without reasonable accommodations, is able to perform the essential functions of a job she holds or desires." Spears v. Creel, 607 F. App'x 943, 948 (11th Cir. 2015) (citing 42 U.S.C. § 12111(8)); see also Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003). "'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." Earl, 207 F.3d at 1365. Under the ADA, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

Pilgrim's Pride is headquartered in Colorado and employs approximately 34,000 people. Lagos Dec. (Doc. 34, Ex. A) at ¶ 4. The Live Oak facility where Mattair works employs over 1,500 people and is one of 28 Pilgrim's Pride plants nationwide. Id. According to the employee handbook for the Live Oak facility, "[w]orking safely is a condition of employment." Mattair Depo. (Doc. 34, Ex. B) at Ex. 4 at 36, CM/ECF PageID 503. In Mattair's job as a Lead in the giblet area, she

---

jury to infer intentional discrimination. See Smith, 644 F.3d at 1328. Both she and Pilgrim's Pride present their analyses of the discrimination claim under the McDonnell Douglas burden-shifting framework. The Court does not find any "convincing mosaic of circumstantial evidence" to preclude granting summary judgment.

supervised nine employees working on the production floor, ensured orders were timely and satisfactorily filled and sent to customers, performed inventory checks, and filled in when employees left their spots on the line. Mattair Depo. (Doc. 34, Ex. B) at Tr. 28-30. Leads frequently move about the production floor and below equipment and production lines from which chickens dangle from overhead shackles. Riley Depo. (Doc. 34, Ex. C) at Tr. 36; Moseley Depo. (Doc. 34, Ex. F) at Tr. 27-31. The giblet area itself does not have overhead chickens but it is accessed by walking through other areas of the production floor that do. Riley Depo. (Doc. 34, Ex. C) at Tr. 33-34, 36. Pilgrim's Pride requires employees to wear bump caps at all times while on the production floor as part of their personal protection equipment.[5] Smith Depo. (Doc. 34, Ex. E) at Tr. 7-8; Gallon Depo. (Doc. 34, Ex. D) at Tr. 11-13; Moseley Depo. (Doc. 34, Ex. F) at Tr. 17-18, 21; Lago Dec. (Doc. 34, Ex. A) at ¶¶ 17-21; Riley Depo. (Doc. 34, Ex. C) at Tr. 18-19, 30-31, 59. Bump caps prevent production employees from bumping their heads into equipment, lines, and chickens hanging

---

[5]In addition to the bump caps, all employees are required to wear safety glasses while on the production floor. Both of these items are supplied by Pilgrim's Pride, along with weekly supplies of hair nets, ear plugs, cotton gloves, and beard nets. See Employee Equipment Policy (Doc. 34, Ex. B, Ex. 10)
Pilgrim's Pride's bump cap policy states:
> In an effort to continue to provide a safe work environment, every team member and visitor is required to wear bump caps and eye protection in all production and maintenance areas of the complex.

Mattair Depo. (Doc. 34, Ex. B) at Ex. 11, dated January 2, 2014, (CM/ECF PageID 547).

from overhead shackles, and protect employees from the blood and water that can drip from the chickens. Lagos Dec. (Doc. 34, Ex. A) at ¶ 18; Gallon Depo. (Doc. 34, Ex. D) at Tr. 11-13; Moseley Depo. (Doc. 34, Ex. F) at Tr. 17, 31. This requirement applies to production line supervisors and managers as well.[6] Riley Depo. (Doc. 34, Ex. C) at Tr. 17. A team of safety coordinators patrol the production floor ensuring that all required safety measures are being followed, including that employees are wearing the required personal protection equipment. Smith Depo. (Doc. 34, Ex. E) at Tr. 9.

This bump cap policy was in place company-wide before June 2016, but the Live Oak facility did not enforce it for five or six production floor employees, including Mattair, who provided doctor's notes saying the bump caps gave them headaches. Riley Depo. (Doc. 34, Ex. C) at Tr. 18, 30-31. However, in June 2016, Pilgrim's Pride's corporate office explained to the Live Oak management that wearing a bump cap is an essential job requirement for all production employees that could not be excused and indeed, no other plant had ever excused the requirement for any

---

[6]According to Bobby Riley, who was the Live Oak HR manager at the time, the only employees at the facility who do not regularly wear bump caps are those working in offices, including accounting, purchasing, parts, nursing, control room operations, HR, and classroom training (where Mattair currently works). Riley Depo. (Doc. 34, Ex. C) at Tr. 12-14, 17. Riley testified that there are about 120 employees in these positions at the Live Oak facility. Id. at Tr. 12. They are required to wear bump caps when entering the production floor. Id. at Tr. 13. Pilgrim's Pride currently accommodates Mattair by permitting her to summon employees on a radio instead of entering the production floor. Lagos Dec. (Doc. 34, Ex. A) at ¶ 32.

6

employee. Id. at Tr. 19.[7] On June 28, 2016, management posted notices at the Live Oak facility advising employees that the bump cap policy was mandatory and could not be excused. See Lagos Dec. (Doc. 34, Ex. A) at ¶ 21. Pilgrim's Pride's Live Oak Health and Safety Manager testified that once the corporate office advised them that the bump cap policy was mandatory for everyone in the production area, no one could be excused.[8] Smith Depo. (Doc. 34, Ex. E) at Tr. 15-16.

Even drawing all inferences in Mattair's favor, the record readily supports that wearing a bump cap is an essential safety requirement for being on the production floor at Pilgrim's Pride.[9] The job of Lead involves directly supervising and monitoring the work of employees on the production floor and occasionally doing the work of those normally supervised by the Lead. Because Mattair could not wear a bump cap (and presented a doctor's note saying so), she could not perform the essential

---

[7] According to Riley, the corporate office was apparently unaware that the Live Oak facility had been making exceptions to the mandatory bump cap policy. It came to their attention when Riley called in response to a new company policy about wearing color-coded bump caps. During that conversation, Riley was advised that there were no exceptions, that no other plant had ever allowed exceptions, and that it was a condition of employment to wear a bump cap on the production floor. See Riley Depo. (Doc. 34, Ex. C) at Tr. 18-19.

[8] The only substitute for a bump cap would be to wear a hard hat, which is even more cumbersome than a bump cap. Smith Depo. (Doc. 34, Ex. E) at Tr. 10.

[9] In her brief, Mattair contends that Riley testified that the bump cap is not really needed in the giblet area. That is not a fair reading of his testimony (see Doc. 34, Ex. C at Tr. 32-33) and is insufficient to draw any reasonable inferences in Mattair's favor on this point.

functions of her job as a Lead on the production floor at Pilgrim's Pride. Mattair is therefore not a qualified individual within the meaning of the ADA. See, e.g., Bagwell v. Morgan Cty. Comm'n, 676 F. App'x 863, 866-67 (11th Cir. 2017) (affirming summary judgment in ADA discrimination case where plaintiff "failed to present any evidence contradicting [her employer's] expectations for the position beyond her own envisioning of the . . . job"); Owusu-Ansah v. Coca-Cola Co., 715 F.3d 1306, 1313 (11th Cir. 2013) (affirming summary judgment where employee's inability to handle stress of job prevented him from being "otherwise qualified"); Jackson v. Veteran's Admin., 22 F.3d 277, 278 (11th Cir. 1994) (holding that "being present" on a routine basis to perform the job duties was an essential function of housekeeper's aide).

Mattair argues that Pilgrim's Pride could have allowed her to continue to do her job without wearing a bump cap. But "[t]he ADA does not require an employer to eliminate an essential function of the employee's job or reallocate job duties to change the functions of the job." Lobascio v. Broward Cnty., No. 12-60134-CIV, 2012 WL 12872587, at *7 (S.D. Fla. Sept. 28, 2012) (citing Webb v. Donley, 347 F. App'x 443, 446 (11th Cir. 2009)). Other than her evidence that the Live Oak facility previously excused compliance with the company policy requiring bump caps for a few employees, Mattair has no evidence to contest that wearing a bump cap is an essential requirement for all employees working in the production area. Thus, Pilgrim's Pride was not required to permit Mattair to continue doing her job as a Lead

in the production area without wearing a bump cap.  See, e.g., Wood, 323 F.3d at 1314 ("[P]rior accommodations do not make an accommodation reasonable."); Valdes v. City of Doral, No. 13-CV-24048, 2015 WL 1968849, at *9 (S.D. Fla. Apr. 30, 2015) (explaining that employer's prior accommodation of the plaintiff had "no bearing on its obligation to [the plaintiff] under the ADA"), aff'd, 662 F. App'x 803 (11th Cir. 2016); Lobascio, 2012 WL 12872587, at * 7 ("An employer . . . is not required to revoke its policies which are linked to the essential performance of the job to grant an individual with a disability an accommodation.").  Mattair's disability discrimination claim fails as a matter of law.

Mattair's amended complaint does not clearly set forth a separate claim of failure to accommodate but to the extent she is raising one, that fails too.  Mattair has not demonstrated that she requested any reasonable accommodation that would permit her to perform the essential functions of her job as a Lead in the giblet area. While transfer to another position can sometimes be a reasonable accommodation, the ADA does not require that a disabled employee receive preferential treatment in competing for vacant positions.  See EEOC v. St. Joseph's Hosp., Inc., 842 F.3d 1333, 1345-47 (11th Cir. 2016).  Mattair has no evidence to dispute that she was either not qualified (because she couldn't wear a bump cap) or was not the best candidate for the positions for which she applied but was not selected.  And, when a position came along for which Mattair was the best qualified candidate (and that she

actually applied for), she was offered (and accepted) the position.

**B.    Count Two (FMLA)**

Mattair claims that Pilgrim's Pride interfered with her use of FMLA leave and retaliated against her for taking FMLA leave. To prove an FMLA interference claim, Mattair must show "she was entitled to a benefit denied by [Pilgrim's Pride]." Han v. Emory Univ., 658 F. App'x 543, 546 (11th Cir. 2016). And, if she proves she was denied an FMLA benefit, she must further show she was prejudiced by the violation. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).

Mattair was on intermittent FMLA leave for most of 2009-2016 for chronic headaches and hypertension. Lagos Dec. (Doc. 34, Ex. A) at ¶ 13. She was never denied an FMLA leave request and was never suspended, terminated, or disciplined for attendance violations. Id. at ¶¶ 14-15. Mattair complains that Pilgrim's Pride frequently lost her paperwork, accused her of violating the attendance policy, and threatened to terminate her for what Pilgrim's Pride thought were unexcused absences. As a result, Mattair had to keep good records to prove her entitlement to leave. But even so, Mattair agrees she was never actually disciplined and all her requested FMLA leave was approved.[10] Mattair Depo. (Doc. 34, Exhibit B) at Tr. 60,

---

[10]A computer program tracks absences on a daily basis. Lagos Dec. (Doc. 34, Ex. A) at ¶¶ 9, 11. An employee may submit documentation (such as a doctor's note) within five days to excuse an absence. Id. at ¶ 8. HR personnel later adjust the records to reflect that. Id. at ¶ 10. According to one of Mattair's former supervisors, sometimes this took several days, and possibly weeks, depending on how quickly the

63-64, 67.  See, e.g., Han, 658 F. App'x at 547 ("[E]ven taking the evidence in the light most favorable to [the plaintiff], no reasonable jury could conclude that [the employer's] de minimis reporting requirements [which required the plaintiff to manually track her FMLA hours] arose to interference.").

To the extent Mattair argues that Pilgrim's Pride interfered with her FMLA rights by failing to reinstate her to her prior position, that was not a right to which she was entitled because, as explained above, Mattair could not perform the job of a Lead on the production floor because she could not wear a bump cap, an essential requirement of the job.  See 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA."); Grace v. Adtran, Inc., 470 F. App'x 812, 816 (11th Cir. 2012) (explaining that an employee who could not lift more than ten pounds was not denied an FMLA benefit when she was not permitted to return to her former position following maternity leave because she still had the lifting restriction).  And, to the extent Mattair is arguing that placing her on involuntary leave interfered with her rights under the FMLA, she has

---

HR department was working.  Vibbert Depo. (Doc. 34, Ex. G) at Tr. 12, 14-15.  Mattair testified that in her opinion, the problem with her attendance records was caused by a Pilgrim's Pride human resources records clerk who Mattair believed was jealous of Mattair for marrying the clerk's ex-boyfriend.  Mattair Depo. (Doc. 34, Ex. B) at Tr. 54-55.  Because Mattair was never actually denied FMLA leave, that's irrelevant to her interference claim (and undermines the causation element of Mattair's other claims).

not demonstrated that such a theory is recognized in the Eleventh Circuit. See Grace, 470 F.App'x at 816 ("This Court has not yet addressed whether an involuntary leave theory is actionable under the FMLA."); Brooks v. Prospect of Orlando, Ltd., Co., No. 3:16-cv-1089-J-34JBT, 2017 WL 6319552, at *9 (M.D. Fla. Dec. 11, 2017) (citing Grace, 470 F. App'x at 816). Even if it was, Mattair's claim would be premature under the standard adopted by those circuits that recognize such a claim, which find it only ripens when a plaintiff is later denied FMLA leave because it has been exhausted. See, e.g., Wysong v. Dow Chem. Co., 503 F.3d 441, 449 (6th Cir. 2007); Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1244 (9th Cir. 2014). Here, by contrast, Mattair testified that her FMLA was always (if not immediately) approved. Mattair Depo. (Doc. 34, Ex. B) at Tr. 60, 67-68.

On this record, Mattair has failed to show that there is a genuine issue of material fact as to preclude granting summary judgment in Pilgrim's Pride's favor on her FMLA interference claim.

To prove an FMLA retaliation claim, Mattair must demonstrate that Pilgrim's Pride "intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). Without direct evidence that an employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," id., a plaintiff must establish a prima facie case of

retaliation by showing (1) she "engaged in statutorily protected conduct," (2) she "suffered an adverse employment action, and (3) there is a causal connection between the two." Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010) (citation omitted). This claim fails because Mattair was never denied any FMLA leave request and suffered no other adverse employment action. Further, no reasonable inferences support her theory that Pilgrim's Pride enforced its bump cap policy in retaliation for her having provided documentation that a recent round of absences were excused under the FMLA. According to her leave records, Mattair had been on intermittent leave for the past seven years with no consequences. See Lagos Dec. (Doc. 34, Ex. A) at ¶ 13. Pilgrim's Pride is entitled to summary judgment on Mattair's FMLA retaliation claim.

### C. Count Three (Retaliation)

In Count Three, Mattair alleges Pilgrim's Pride retaliated against her in violation of Title VII, the FCRA, "and other statutory provisions cited herein"– presumably meaning the ADA and the FMLA. See Doc. 2 at ¶ 29. For the reasons stated above, Pilgrim's Pride is entitled to summary judgment on Mattair's FMLA retaliation claim. Mattair has not raised any separate arguments as to how she was retaliated against in violation of the ADA so that claim fails too.

As for her Title VII retaliation claim, Mattair would have to demonstrate that she engaged in statutorily protected activity, she suffered a materially adverse

13

employment action, and there was a causal link.[11] Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted). Mattair tries to establish this by relying on two separate incidents that she contends caused Pilgrim's Pride to retaliate against her. She first argues that a 2015 EEOC charge she filed prompted Pilgrim's Pride to warn her about absences and threaten to terminate her. Again, however, those absences were ultimately excused and Mattair suffered no adverse employment action.

Mattair's second argument is that the bump cap policy was enforced against her just weeks after she was deposed in another employee's Title VII claim against Piligrim's Pride. Mattair attempts to draw a connection between these two events based on their timing. In this case, without more, that is simply too tenuous. Mattair blames the Live Oak plant's HR manager for enforcing the bump cap policy but the uncontradicted evidence is that Pilgrim's Pride's corporate headquarters directed that the policy be enforced. And there's no reasonable inference to suggest that someone in Pilgrim's Pride's corporate headquarters in Colorado directed the Live Oak facility to enforce an essential safety measure that was already in force in all of Pilgrim's Pride's other facilities, as a means to retaliate against Mattair for a deposition she had recently given in another employee's Title VII case. Moreover, Mattair proffered no

---

[11]The same framework and analysis applies to Mattair's FCRA retaliation claim. See Howard v. Walgreen Co., 605 F.3d 1239, 1244 n.4 (11th Cir. 2010).

14

evidence that the Colorado corporate office even knew that Mattair had given a deposition. See Stone v. Geico Gen. Ins. Co., 279 F. App'x 821, 824 (11th Cir. 2008) (noting Eleventh Circuit "rule that the protected activity must be known to the decision-maker who takes the adverse action"); see also Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799-800 (11th Cir. 2000) (explaining that temporal proximity is insufficient to establish causation when there is unrebutted evidence that the decision maker did not know about the incident). The bump cap policy had been in place for all employees on the production floor long before Mattair gave her deposition, and Riley testified that it was a surprise to the corporate office that the Live Oak facility was allowing a few employees with medical excuses (including Mattair) to work on the production floor without wearing a bump cap. Mattair has not rebutted this testimony.[12] Thus, Mattair has not demonstrated a prima facie case of Title VII retaliation. Pilgrim's Pride is entitled to summary judgment on Mattair's retaliation claim.

---

[12]That Pilgrim's Pride later offered Mattair a higher-paying position further undermines her retaliation theory.

## II. Conclusion

Accordingly, it is hereby

**ORDERED**:

Defendant Pilgrim's Pride Corporation's Motion for Summary Judgment (Doc. 34) is **GRANTED**. The Clerk shall enter judgment in favor of defendant Pilgrim's Pride Corporation and against plaintiff Kimberly Mattair, and shall thereafter close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2019.

*[Signature]*
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record